Pettibone, J.,
delivered the opinion of the Court.
This was an action of trover, for some negroes, brought by Patter ». Gratiot and Stokes. Judgment, in the Court below, for defendants. Since the rendition of that judgment, Stokes has died. A writ of error has been taken out against Gratiot and Stokes — the death of Stokes suggested, and the writ of error prosecuted against Gra-, tiot alone, without making the representatives of Stokes a party. Some doubts have been suggested, whether the judgment can he reversed, in toto, or only so far as respects Gratiot, unless the representatives of Stokes are brought in. We are of opinion, that the proceedings are well enough; that the action being in tort, and the judgment joint, the proceedings are well enough against the survivor to the judgment, and that no other person need be made a party to this proceeding.
At the trial in the Court below, the plaintiff, to prove his title to this negroes in question, gave in evidence' an instrument in writing, of which the following is a copy:
“ State of Louisiana, Parish of Feliciana, Jacksonville, April 15th, 1820, I do give unto my nephew, Jacob Potter, a bill of sale of seven negroes, names as follows, viz: three female negroes, one by the name of Fanny, one by the name of Ann, and one by the name of Lucy; and four boys, viz : one by the name of Moses, one by the name of William, one by the name of Henry, and one by the name of George, a mulatto; and also, two tracts land, lying in the State of Mississippi, county of Wilkinson, near Woodville ; which I agreed to bequeath to said nephew, if he would reside in this county, with me, to which said nephew did comply with. Justus Terrill.”
The plaintiff also proved that negroes, corresponding to the names and description in the said writing mentioned, were brought by Justus Terrill to Missouri, in the spring of the year 1819, and kept here and hired out as his own till 1821, when said Terrill died, having made his will and appointed the defendants his executors — that' defendants sold said negroes. The plaintiff also proved that the said Terrill went to Louisiana in 1820, leaving all the negroes in question in Missouri. There was no proof offered of the actual or symbolical delivery of the negroes by Terrill to the *262 plaintiff, except the instrument) and no evidence offered of any consideration being given by said plaintiff, other than that expressed on the face of said writing.
Upon this evidence the defendant’s counsel prayed the Court to instruct the jury, that the said writing, as a gift, did not pass the title of the said negroes to the plaintiff without a delivery of them. Secondly, that the said writing is not evidence of a sale of the negroes to the plaintiff, inasmuch as there is no consideration, good or valuable, expressed on the face of the writing, or proved by other testimony j which instructions Were given by the Court, and a verdict was found for the defendants, on which judgment was entered.
The points which have been made in this Com t, arise out of the construction of the above writing.
First. It is contended that it is a good deed of gift.
Second. It is a good bill of sale.
Third. That personal property being abroad, in a distant country, is passed by a delivery of the bill of sale, without an actual delivery of the property.
The construction of written instruments is a matter of law. To be sure, when a writing is ambiguous, it may be explained by parol evidence; and the evidence and the instrument go before the jury, for their construction of both together. But when the legal effect of a writing is to be determined by what appears upon the face of it, there the construction of it is matter of ljw,
In this case, we think, the Court below erred as to the construction of this instrument. We think it a good bill of sale j and believe it to have been intended as such,, by the parties to it. We think the fair interpretation of the paper to be, that he thereby, by that instrument, gives a bill of sale, &c. Suppose that the words, “ unto my nephew, Jacob Potter,” were tiansposed to the end of that branch of the sentence which relates to the negroes. It would then read, “ I do give a bill of sale of seven negroes, names as follows: Fanny, &c., unto my nephew, Jacob Potter.” If the sentence was thus transposed, the meaning would be clear, that the bill of sale referred to the instrument then made. Thereis a sufficient consideration appearing upon the face of it, to support the sale. The residing of the nephew with the uncle, may as well be understood as forming the consideration for the transfer of the negroes as of the land.
We are also of opinion that, as between the páities to the bill of sale, the property in the negroes passed by the delivery of the bill of sale. The defendants in this case received the negroes as executors of Terrill, and stand precisely in his situation.
The judgment below must be reversed, and a new trial awarded in the Court below; and plaintiff must recover his costs on this writ of error..